JOSEPH H. McNABB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94310. Promulgated July 31, 1940.

*David W. Kahane, Esq.,* and *Fred S. Johnson, C. P. A.,* for the petitioner.

*F. R. Shearer, Esq.,* and *E. G. Sievers, Esq.,* for the respondent.

OPINION.

HILL: The issue presents a question of fact as to whether the bank stocks actually became worthless in the taxable year 1936, which presupposes that they had value during the years 1933–1936, or, whether such stock became worthless in a taxable year prior to 1936.

A loss by reason of the worthlessness of stock must be deducted in the year in which the stock becomes worthless and the loss is thereby actually sustained. In *Sterling Morton*, 38 B. T. A. 1270, 1279, 1280, cited in *James A. Connelly*, 42 B. T. A. 237, the Board reviewed many types of "identifiable events" which have in the past been considered as establishing the worthlessness of stock. Applying the principles of these two cases to the facts in the instant case, it is the Board's conclusion that the petitioner's bank stocks actually became worthless during 1933 and thus prior to the taxable year here involved.

Here it is shown that the two banks were in an admittedly precarious position prior to the national bank holiday in March 1933. As was the condition in many other sections of the country, depositors were hastening to withdraw their accounts. The two banks had borrowed cash from the First National Bank in a sizable amount and in addition had converted a portion of their more easily liquidated assets. The directors, in view of this situation, called a special meeting and decided not to reopen, but to endeavor to pay off all the depositors if possible. The resolution adopted at that meeting showed only too clearly that they believed the banks could not reopen. The subsequent pledge of all the banks' assets to the First National Bank in exchange for the further loan did not change the financial position of the banks, so far as the stockholders were concerned. The depositors were the only beneficiaries of this liquidation. It was only in view of the outside possibility of there being a surplus of collateral after the eventual pay-off of the creditors that the directors made a condition to the loan agreement that the First National would return to them all amounts received from liquidation more than sufficient to repay the loan. To avoid a determination that the stock became

worthless at that time, there must be a showing that, despite the loss of any surplus liquidating value, there still remained a real potential value until the year 1936 through the continued existence of a reasonable expectation that the stock would become valuable.

The banks did not continue to do any business after the bank holiday. Complete control of all their erstwhile assets was in the hands of the First National Bank, which assumed none of the liabilities of the banks. Further, all costs of liquidation were to be borne by the banks. The assets consisted of realty in and around Chicago; and it was common knowledge that values in realty had hit a new low at this time. The values of these assets as recorded on the books of the banks did not clearly and can not ever be said to reflect actual value. Cf. *Smith* v. *United States* (1936), 16 Fed. Supp. 393. As was later shown, by circular letter in 1936, the values per the books were grossly inflated. There was no basis for a reasonable expectation that the book values would ever clearly reflect the possible liquidating value of the assets. Hence, there was no reasonable expectation that the stockholders would ever realize anything on their shares, inasmuch as the depositors themselves would require all the cash on hand at the banks after the final loan from the First National.

Petitioner contends that a slow process of liquidation by the First National could be expected to realize a better price than an immediate liquidation in 1933 and that it therefore was not unreasonable to assume that a figure more nearly allied to that shown on the books of the banks might be realized.

"It is just conceivable that cases might arise in which some realization could be had by the stockholders in the long future. As a practical matter, however, the business world never remotely considers that contingency. * * *" *In re Hoffman* (1936), 16 Fed. Supp. 391; affirmed per curiam, 87 Fed. (2d) 200. Furthermore, the primary assumption of petitioner's statement must be that the book figures reasonably reflected actual value; which assumption can not fairly be made.

Thus, from the time efforts to liquidate the assets commenced and up to and including the year 1936, the lack of any reasonable prospect of the petitioner ever recovering anything on his stock remained the same.

The element of notice, on which petitioner appears to rely, is of no materiality. Regardless of when the stockholders learn of the value of their stock, it is the date of worthlessness that is material. Admittedly, the rule is a harsh one. A fraudulently operated corporation might succeed in keeping the information from reasonably diligent shareholders for years, but this would not entitle them to a deduction in the year they discovered the fraud. The standard for judging worth under section 23 (e) of the Revenue Act of 1936 has been inter-

preted to be an objective one; not subjective. Hence, regardless of petitioner's opinion as to the reasonable possibilities in 1933, the facts of the matter disallow the conclusion reached by him at that time. *William E. Steinback*, 30 B. T. A. 1252.

The Commissioner determined that worthlessness occurred in 1933. Not only has that determination not been refuted by the petitioner, but the evidence very strongly supports it. That determination and the evidence in the case entirely overcome any presumption of continuing worth of the stock through and after 1933. The disallowance of the claimed loss deduction is, therefore, sustained.

*Decision will be entered for respondent.*